UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>ECAST, INC. and NSM MUSIC GROUP, LTD.,<br><br>   Defendants. | Civil Action No. 05-1754   (CKK) |

**FINAL JUDGMENT**

WHEREAS, the United States of America filed its Complaint on September 2, 2005, alleging that Defendants Ecast, Inc. ("Ecast") and NSM Music Group, Ltd. ("NSM") entered into an agreement in violation of Section 1 of the Sherman Act, and Plaintiff and Defendants, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against, or any admission by, any party regarding any such issue of fact or law;

AND WHEREAS, Ecast and NSM agree to be bound by the provisions of this Final Judgment pending its approval by this Court;

AND WHEREAS, the essence of this Final Judgment is the prevention of future conduct by Ecast and NSM that impairs competition in the digital jukebox platform market;

AND WHEREAS, the United States requires Ecast and NSM to agree to certain procedures and prohibitions for the purpose of preventing the loss of competition;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND

DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Ecast and NSM under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II. DEFINITIONS

As used in this Final Judgment:

A. "Digital Jukebox" means a commercial vending device that upon payment plays for public performance digital music files that are delivered from a remote server and stored on any internal or connected data storage medium.

B. "Digital Jukebox Platform Competitor" means any natural person, corporate entity, partnership, association, or joint venture that has licensed (or that Ecast or NSM knows or has reason to believe has plans to license) a collection of digital music files from U.S. copyright holders for the purpose of supplying music content in the United States to a Digital Jukebox.

C. "Ecast" means Defendant Ecast, Inc., a privately held company organized and existing under the laws of the State of Delaware, with its principle place in San Francisco, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their officers, managers, agents, employees, and directors acting or claiming to act on its behalf.

D. "NSM" means Defendant NSM Music Group, Ltd., a company incorporated under the laws of the United Kingdom, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their officers, managers, agents, employees, and

directors acting or claiming to act on its behalf.

### III.   APPLICABILITY

This Final Judgment applies to Ecast and NSM, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

### IV.   PROHIBITED AND REQUIRED CONDUCT

1. Each defendant, its officers, directors, agents, and employees, acting or claiming to act on its behalf, and successors and all other persons acting or claiming to act on its behalf, are enjoined and restrained from directly or indirectly adhering to or enforcing § 4 ("EXCLUSIVITY") of Defendants' September 2003 "Manufacturing License, Distribution License and Patent License Agreement," or from in any manner, directly or indirectly, entering into, continuing, maintaining, or renewing any contractual provision that prohibits NSM from becoming or limits NSM's ability to become a Digital Jukebox Platform Competitor.

2. Each defendant, its officers, directors, agents, and employees, acting or claiming to act on its behalf, and successors and all other persons acting or claiming to act on its behalf, are enjoined and restrained from, in any manner, directly or indirectly, entering into, continuing, maintaining, or renewing any agreement with any Digital Jukebox Platform Competitor that prohibits such person from supplying or limits the ability of such person to supply music content in the United States to Digital Jukeboxes, provided however, that (a) any merger or acquisition involving either Defendant; (b) any valid license of U.S. Patent No. 5,341,350 from either Defendant to a nonparty; or (c) any valid license of U.S. Patent No. 5,341,350 from NSM to Ecast, which does not in any way prohibit NSM from becoming or limit NSM's ability to become a Digital Jukebox Platform Competitor, will

not be considered, by itself, a violation of this paragraph.

## V. COMPLIANCE PROGRAM

1. Each Defendant shall establish and maintain an antitrust compliance program which shall include designating, within thirty (30) days of entry of this Final Judgment, an Antitrust Compliance Officer with responsibility for implementing the antitrust compliance program and achieving full compliance with this Final Judgment and the antitrust laws. The Antitrust Compliance Officer shall, on a continuing basis, be responsible for the following:

    a. furnishing a copy of this Final Judgment within thirty (30) days of entry of the Final Judgment to each Defendant's officers, directors, and employees;

    b. furnishing within thirty (30) days a copy of this Final Judgment to any person who succeeds to a position described in Section V(1)(a);

    c. arranging for an annual briefing to each person designated in Section V(1)(a) or (b) on the meaning and requirements of this Final Judgment and the antitrust laws;

    d. obtaining from each person designated in Section V(1)(a) or (b) certification that he or she (1) has read and, to the best of his ability, understands and agrees to abide by the terms of this Final Judgment; (2) is not aware of any violation of the Final Judgment that has not been reported to the Antitrust Compliance Officer; and (3) understands that any person's failure to comply with this Final Judgment may result in an enforcement action for civil or criminal contempt of court against each Defendant and/or any other person who violates this Final Judgment;

    e. maintaining (1) a record of certifications received pursuant to this Section; (2) a file of all documents related to any alleged violation of this Final Judgment and the antitrust laws; and (3) a record of all communications related to any such violation, which shall identify the date and place of the communication, the persons involved, the subject matter of the communication, and the results of any related investigation;

    f. reviewing the content of each e-mail, letter, memorandum, or other communication to any Digital Jukebox Platform Competitor written by or on behalf of an officer or director of either Defendant that relates to the recipient's supply of music content in the United States to Digital Jukeboxes

in order to ensure their adherence to this Final Judgment.

2.   If a Defendant's Antitrust Compliance Officer learns of any violations of any of the terms and conditions contained in this Final Judgment, Defendant shall immediately take appropriate action to terminate or modify the activity so as to comply with this Final Judgment.

## VI.   COMPLIANCE INSPECTION

1.   For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained or designated thereby, shall, upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable written notice to Defendants, be permitted:

   a.   access during Defendants' office hours to inspect and copy, or at the United States' option, to require Defendants to provide copies of, all books, ledgers, accounts, records, and documents in their possession, custody, or control relating to any matters contained in this Final Judgment; and

   b.   to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

2.   Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

3.   No information or documents obtained by means provided in this Section shall be divulged by Plaintiff to any person other than an authorized representative of the Executive Branch of the United States, except in the course of legal proceedings to which the United States is a party

(including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

4. If at the time Defendants furnish information or documents to the United States, they represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall use its best efforts to give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## VII.   RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further Orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## VIII.   EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## IX.   NOTICE

For the purposes of this Final Judgment, any notice or other communication shall be given to the persons at the addresses set forth below (or such other addresses as they may specify in writing to Ecast or NSM):

> John Read
> Chief

Litigation III Section
U.S. Department of Justice
Antitrust Division
325 Seventh Street, N.W., Suite 300
Washington, D.C. 20530

## X. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the Public Interest.

Date: December 16, 2005

                                      Court approved subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

                                      /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge